Emily A. Brandenburg (AKA Emily A. Kearney) (CA Bar No. 287652)
The Kearney Firm, APC
301 Bayview Circle, Suite 104-5278
Newport Beach, California 92660
(714) 624-4186
emily@thekearneyfirm.com

Attorney for Plaintiff Proxy Financial Corp.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Proxy Financial Corp., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Hudson Valley Wealth Management, a New York corporation; Christopher Conover,<br><br>Defendants. | Case No.: 2:26-cv-01495-CSK<br><br>**DECLARATION OF BRYAN CAULKINS IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL BRIEF OPPOSING TRANSFER OF VENUE UNDER 28 U.S.C. 1404**<br><br>DEPT.: 25 |

I, Bryan Caulkins, declare as follows:

**Personal Knowledge and Scope**

1. I am the Managing Partner and a co-founder of Plaintiff Proxy Financial Corp. ("Proxy"). I signed the parties' Asset Purchase and Sale Agreement dated June 27, 2025 (the "Agreement") on Proxy's behalf. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2. I submit this declaration in support of Proxy's supplemental brief in opposition to Defendants' request to transfer this action to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a).

**Proxy's Offices, Personnel, and Markets**

3. Proxy's largest office at the time of the transaction was, and is still, located in Walnut Creek, California, and Walnut Creek housed Proxy's largest concentration of staff both at the time of the transaction and currently. Walnut Creek served as Proxy's operational center for acquisitions and client transitions at the time of the transaction at dispute. At the time of the transaction with Defendants in mid-2025, Walnut Creek was Proxy's only location capable of performing the account-transfer and client-transition functions necessary to receive and service the acquired client accounts — the personnel responsible for preparing account-transfer forms, generating electronic-signature packages, and processing client onboarding all worked from that office, and Proxy had no support personnel anywhere else in the country who could perform those functions. Approximately five Proxy personnel were then based in Walnut Creek, including Arthur "Wayne" Potter, Proxy's senior financial planner, along with four others. At the time of the transaction, the office was located at 877 Ygnacio Valley Road, Suite 220, Walnut Creek, California 94596; Proxy has since relocated it to 1212 Broadway Plaza, Office 106, Walnut Creek, California 94596.

4. Proxy's corporate counsel, Vincent Van Ho, was and is located in Sacramento, California. Mr. Ho has served as Proxy's outside corporate counsel for approximately five to six years. He prepared the transaction documents for the acquisition from Defendants, and I communicated with his Sacramento office throughout the drafting, execution, and post-execution phases of the transaction. I electronically signed the Agreement through the signature package his office administered.

5. Proxy's business is led by its two founders: myself and Christopher "C.J." Davidson. I reside in the Orlando, Florida area. Mr. Davidson resides in Dallas, Texas.

6. Mr. Potter resides in the area between Sacramento and Walnut Creek, California.

7. Proxy has no office in New York and had none at the time of the transaction. Proxy has no New York office registered with the U.S. Securities and Exchange Commission, FINRA, or any other

regulator of its business, and those public records may be readily checked to confirm this. At the time of the transaction, Proxy did not have personnel in New York.

8. Proxy's only connection to New York is that a minority shareholder of Proxy's holding company resides there. He is not active in Proxy's day-to-day business and had no involvement in the transaction with Defendants.

9. The reference to "New York" that appears alongside other cities in my email signature and certain marketing materials reflects industry convention in referencing major financial centers; it does not reflect an office or place of business. Proxy does maintain an office in Miami, Florida, and several locations in the San Francisco Bay Area.

10. Proxy's principal operations relating to acquisitions and client transitions were, at the time of the transaction, concentrated in California, and they remain so today.

11. California is, by a wide margin, Proxy's largest revenue market. Its next-largest markets are Texas and Florida. New York is not a material revenue market for Proxy. Proxy's profit-and-loss and revenue records, which I have reviewed, and which are maintained in the ordinary course of business, confirm these facts.

**The Transaction and the Failed Transition**

12. On or about June 27, 2025, Proxy entered into the Agreement with Defendants Hudson Valley Wealth Management and Christopher Conover to purchase a book of financial-advisory business, including client accounts, client relationships, goodwill, and related rights. Proxy paid Defendants $664,000.00 upon execution of the Agreement. Defendants did not deliver the purchased assets, and this lawsuit and the parties' pending AAA arbitration followed.

13. The work of transitioning Mr. Conover's clients to Proxy — the performance at the heart of this dispute — was to be carried out by Proxy's Walnut Creek, California, staff, because they were

the only Proxy personnel in the country capable of preparing the necessary account-transfer documentation at that time.

14. As part of the attempted transition, Mr. Potter had several telephone conversations with Mr. Conover regarding the transfer of Mr. Conover's client relationships to Proxy. Mr. Potter also worked directly with at least one of the clients whose account Proxy purchased, Samuel Player, and onboarded Mr. Player onto Proxy's financial-planning software platform. Mr. Player logged into that platform on numerous occasions; I receive an automated email notification each time a client logs in, and I received many such notifications for Mr. Player's account.

15. Alicia Weitzel, a Proxy transition manager based in Phoenix, Arizona, scheduled and participated in transition calls with Mr. Conover during the months following execution of the Agreement.

16. To facilitate the transition, Proxy also paid the rent for Mr. Conover's office space at 1 Blue Hill Plaza, Pearl River, New York, during the transition period, by permitting Mr. Conover to deduct rent from revenue amounts that belonged to Proxy under the Agreement. Proxy contemplated establishing an office presence in Pearl River to service the acquired client relationships, but that plan depended on Mr. Conover actually transitioning the purchased accounts, which never occurred.

17. The client accounts Proxy purchased were not exclusively New York accounts. Based on my review of the client list Mr. Conover provided, the majority of the listed clients were in the New York, New Jersey, and Connecticut area, but the list also included clients in other states, including as far as I can remember in California, Texas, Florida, and Louisiana.

18. The Agreement and the records relating to the transaction are electronic. Proxy maintains no paper transaction records in New York, and I am aware of no physical evidence in New York that would require inspection there. The custodial reporting and billing systems that the Agreement

designates for verifying transferred assets under management are Proxy's own systems, administered by its California-based staff.

**<u>Proxy's Witnesses and the Burden of Litigating in New York</u>**

19. I anticipate that Proxy's witnesses concerning the transaction and the failed transition will include myself, Mr. Davidson, Mr. Potter, Ms. Weitzel, and members of Proxy's Walnut Creek, California staff — who would testify regarding Proxy's Walnut Creek operations and the account-transfer and client-transition functions they stood ready to perform and attempted to perform, and which Defendants' non-performance prevented — in addition to Mr. Ho with respect to the preparation and execution of the transaction documents and the parties' contractual dispute-resolution process. None of Proxy's anticipated witnesses resides or works in New York.

20. Mr. Potter would testify regarding Proxy's Walnut Creek operations, the transition work his team was prepared to perform, and his communications with Mr. Conover and Mr. Player. Testifying in Sacramento would impose essentially no burden on Mr. Potter, who lives in the area. Testifying in New York would require him to travel across the country and be away from the clients he services.

21. Ms. Weitzel would testify regarding the transition calls she scheduled and participated in with Mr. Conover and the lack of progress in the transition. Sacramento is a short direct flight from Phoenix; New York would require cross-country travel.

22. Mr. Davidson would testify regarding Proxy's operations and the transaction. Dallas is no closer to New York than to Sacramento, and Mr. Davidson's family ties are to the Sacramento area, not to New York.

23. Although I reside in Florida, I am Proxy's party representative in this action and will appear in whichever forum this case proceeds. Litigating this case in Sacramento is materially more convenient for Proxy than litigating in New York, because Proxy's operational staff, supporting

witnesses, and the records and systems relevant to this dispute are concentrated in California. Requiring Proxy to litigate in the Southern District of New York would require Proxy to bring its California-based witnesses and operationally critical staff across the country, at significant cost and disruption to its business, in order to litigate over assets that Defendants were paid $664,000 for and never delivered.

24. Proxy has also commenced, and is actively pursuing, an AAA arbitration against Defendants concerning this same transaction, seated in Sacramento County, California as required by Section 6.4 of the Agreement. An arbitrator has been appointed in that proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 22 day of July, 2026.

________________________________

Bryan Caulkins