SCOTT J. TEPPER (State Bar No. 51693)
Email: stepper@raskinlawllp.com
RASKIN TEPPER SLOAN LAW
11333 Iowa Avenue
Los Angeles, California 90025-4214
Telephone: (310) 202-5544

Attorneys for Defendants and Counter-
Claimants Hudson Valley Wealth
Management and Christopher Conover

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROXY FINANCIAL CORP., a Delaware corporation, <br><br> Plaintiff and Counter-Defendant, <br><br> v. <br><br> HUDSON VALLEY WEALTH MANAGEMENT, a New York corporation; CHRISTOPHER CONOVER, an individual, <br><br> Defendants and Counter-Claimants. | Case No.: 2:26-cv-01495-CSK <br><br> **REPLY BY DEFENDANTS IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING THE PLAINTIFF'S COMPLIANCE WITH CALIFORNIA CORPORATIONS CODE §§ 2105 AND 2203(c)** <br><br> Hearing Date:  September 1, 2026 <br> Time:  10:00 a.m. <br> Place:  Courtroom 25, 8th Floor <br><br> Judge:  Hon. Chi Soo Kim, <br> U.S. Magistrate Judge |

DEFENDANTS' REPLY RE MOTION TO STAY UNDER CAL. CORP. CODE §§ 2105 & 2203(c)

# **TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. The July Declarations Attributed the California Business to Proxy Financial Corp...............1

    B. The Opposition Declaration Contradicts the July Declarations. ...........................................2

    C. Proxy Financial Corp.'s Complaint Admits a California Principal Place of Business and That It Is an Operating Company, Not a Holding Company..........................................4

    D. On Either Version of the Facts, Proxy May Not Maintain This Action Without Qualifying..................................................................................................................5

    E. Proxy's Remaining Arguments Do Not Avoid the Bar. .........................................................6

        1. The Business Underlying This Action Is Intrastate, Not Interstate....................................6

        2. Proxy's Own Declaration Establishes Repeated and Successive Transactions. ...............8

    F. This Action Is Upon Proxy Financial Corp.'s Intrastate Business. ........................................9

    G. The Remedy Is a Stay to Permit Compliance, With Dismissal If Proxy Does Not Comply. ........................................................................................................................10

III. CONCLUSION ...........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Title Ins. Co. v. Lacelaw Corp.*
   861 F.2d 224 (9th Cir. 1988) ..............................................................................................4

*D'Amico v. Board of Medical Examiners*
   11 Cal.3d 1 (1974) .............................................................................................................6

*Eli Lilly & Co. v. Sav-On-Drugs, Inc.*
   366 U.S. 276 (1961) ........................................................................................................7, 8

*Hertz Corp. v. Friend*
   559 U.S. 77 (2010) .............................................................................................................5

*Kennedy v. Allied Mutual Insurance Co.*
   952 F.2d 262 (9th Cir. 1991) ..............................................................................................6

*Mediterranean Exports, Inc. v. Superior Court*
   (1981) 119 Cal.App.3d 605 ...............................................................................................8

*Neogard Corp. v. Malott & Peterson-Grundy*
   (1980) 106 Cal.App.3d 213 ...........................................................................................8, 9

*New Hampshire v. Maine*
   532 U.S. 742 (2001) ...........................................................................................................3

*Union Brokerage Co. v. Jensen*
   322 U.S. 202 (1944) ...........................................................................................................7

*United Med. Mgmt. Ltd. v. Gatto*
   (1996) 49 Cal.App.4th 1732 ....................................................................................5, 9, 10

**Statutes**

Cal. Corp. Code § 191 ...............................................................................................6, 8, 9

Cal. Corp. Code § 2105 ...................................................................................................10

Cal. Corp. Code § 2203(c) ..................................................................................2, 5, 9, 10

# I.
## INTRODUCTION

To defeat transfer of this action to New York, Proxy Financial Corp.'s Managing Partner swore, twice in July, that Proxy Financial Corp.'s largest office, its staff, its operational center for acquisitions and client transitions, its systems, and its largest revenue market are all in California, and he named no subsidiary. To defeat this motion, the same declarant now swears the reverse: that Proxy Financial Corp. employs no one and leases nothing in California, and that the California business he attributed to Proxy Financial Corp. in July belongs to subsidiaries he never mentioned. Both accounts cannot be true. One of them is a sham, and Proxy should not be permitted to avoid California's qualification laws by contradicting under oath what it swore to keep this case in a California court.

The dispositive facts are narrow. Proxy Financial Corp. alleged in its Complaint, filed March 2, 2026, and never amended or corrected, that its principal place of business is in California. Neither of Caulkins's declarations disputes that allegation. Whether the Court credits the July declarations or the opposition declaration, the result is the same: a Proxy entity transacts localized intrastate business in California, and Proxy Financial Corp.'s own pleading places its principal place of business in this State. Proxy Financial Corp. may not maintain this action while taking a free ride around the qualification that California law requires.

# II.
## ARGUMENT

**A. The July Declarations Attributed the California Business to Proxy Financial Corp.**

To defeat Defendants' motion to transfer this action to New York, Proxy filed the declaration of its Managing Partner, Bryan Caulkins, on July 22, 2026, and filed it again on July 27, 2026. (ECF Nos. 27-1, 31-2.)[1] In that declaration, Caulkins defined "Proxy" to mean Plaintiff Proxy Financial Corp. (ECF No. 31-2, ¶ 1.)

Caulkins then swore, as to that defined entity, that Proxy Financial Corp.'s largest office

---

[1]    The declaration was refiled on July 27, 2026 to address a redaction issue in a different declaration also filed on July 22, 2026. The two filings of the Caulkins declaration are identical.

and largest concentration of staff are in Walnut Creek, California; that Walnut Creek is Proxy Financial Corp.'s operational center for acquisitions and client transitions; that Proxy Financial Corp.'s principal operations relating to acquisitions and client transitions were, at the time of the transaction, concentrated in California, and remain so; that the Walnut Creek staff were the only personnel in the country who could prepare the account-transfer documentation; that the custodial reporting and billing systems the Agreement designates are Proxy Financial Corp.'s own systems, administered by its California-based staff; that California is, by a wide margin, Proxy Financial Corp.'s largest revenue market; and that the performance at the heart of this dispute was to be carried out by Proxy Financial Corp.'s Walnut Creek staff. (ECF No. 31-2, ¶¶ 3, 10, 11, 13, 18.)

That declaration named no subsidiary and no affiliate. It described Proxy Financial Corp. as the entity that maintains the offices, employs the staff, owns the systems, and holds the California market. Its only reference to any related entity is to a holding company above Proxy Financial Corp., mentioned solely to explain a minority shareholder's New York residence. (ECF No. 31-2, ¶ 8.) Caulkins thus swore that Proxy Financial Corp. was the operating company, with a holding company above it, the reverse of what Proxy asserts now.

## B. The Opposition Declaration Contradicts the July Declarations.

Faced with Defendants' motion to stay under Cal. Corp. Code § 2203(c), Caulkins has now sworn the reverse. In his opposition declaration, executed August 7, 2026, he states that Proxy Financial Corp. serves as the holding company of several affiliated entities (ECF No. 34-1, ¶ 6); that its subsidiaries include Proxy Freedom LLC, Proxy Advisory Group LLC, and House of Proxy LLC (¶ 7); that Proxy Freedom LLC employed the five Walnut Creek personnel identified in the July declaration and leased the Walnut Creek office (¶¶ 15, 16, 18, 19); that Proxy Advisory Group LLC leases the current Walnut Creek office (¶ 20); and that Proxy Financial Corp. does not itself employ any person in California and does not lease or occupy any premises in California (¶¶ 21, 22, 26).

The two accounts cannot both be true. Either Proxy Financial Corp. maintains the offices, employs the staff, owns the systems, and holds the California market, as Caulkins swore in July, or it employs no one and leases nothing in California, as he swears now. Proxy's explanation, that

Caulkins's July declaration used "Proxy" as "organizational shorthand" (ECF No. 34 at 2; *see also* ECF No. 34-1, ¶¶ 4, 5), is not credible. He defined "Proxy" to mean Proxy Financial Corp. and then swore specific, detailed facts about that defined entity. A witness who defines a term and swears particulars about it has not spoken in shorthand. Paragraph 18 puts the excuse beyond repair: Caulkins swore that the custodial reporting and billing systems the Agreement designates are "Proxy's own systems, administered by its California-based staff." (ECF No. 31-2, ¶ 18.) That is an assertion of ownership and employment, not a statement about where witnesses are located, and no venue question called for it. And by his own account, the entity-specific version appeared only because Defendants "have now raised corporate qualification as an issue." (ECF No. 34-1, ¶ 24.) If the new account is true, the July declarations, sworn to keep this action in California, were false when made; either way, the later, self-serving August declaration is the sham the Court should disregard. This is the deliberate manipulation judicial estoppel exists to prevent: seeking one advantage by a sworn position, then another by a clearly inconsistent position in the same proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749–751 (2001).

The opposition declaration does not even complete the reassignment it attempts. It assigns the Walnut Creek personnel and one office lease to Proxy Freedom LLC and the other office lease to Proxy Advisory Group LLC, but it assigns no office, no employee, and no function to House of Proxy LLC, and it says nothing about which entity owns the custodial and billing systems the July declaration called Proxy Financial Corp.'s own, which is the operational center for acquisitions, which holds the California revenue market, or what became of the "several locations in the San Francisco Bay Area" the July declaration described (ECF No. 31-2, ¶ 9); the current opposition declaration reassigns only the two Walnut Creek offices. The declaration reassigns what it must to answer this motion and leaves the rest where the July declaration put it, with Proxy Financial Corp. And the sole exhibit Proxy offered as corroboration, a Secretary of State record cited as Exhibit A (ECF No. 34-1, ¶ 9), was never filed. Even had it been, it would prove only that Proxy Freedom LLC exists as a California limited liability company; it would corroborate nothing that carries the reassignment. Caulkins states that he relied on business records maintained in the ordinary course to identify who employed each person, retained each contractor, and leased each office (ECF No.

34-1, ¶¶ 14, 23), yet he attaches not one of them: no payroll record, no lease, no employment record, and nothing identifying who owns the custodial and billing systems or earned the California revenue. Every fact that matters rests on the uncorroborated word of a declarant contradicting his own prior sworn testimony.

**C. Proxy Financial Corp.'s Complaint Admits a California Principal Place of Business and That It Is an Operating Company, Not a Holding Company.**

Independent of the declarations, Proxy Financial Corp.'s own pleading forecloses its new position. Proxy Financial Corp. alleged in its Complaint, filed March 2, 2026, that its principal place of business is in California. (Compl., ECF No. 1-3, ¶ 2.) That Complaint was prepared and signed by Vincent Van Ho, whom Caulkins identified in July as Proxy's outside corporate counsel in Sacramento for five to six years (ECF No. 31-2, ¶ 4), so the admission was made by Proxy's own California counsel, and it has stood uncorrected since March 2, 2026. A factual allegation in a party's own complaint is a judicial admission that binds the party and the Court, withdraws the fact from issue, and dispenses with the need for proof. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (admissions in the pleadings are binding on the parties and the court). The Complaint's paragraph 2 adds a second admission: "Plaintiff is engaged in the business of financial advisory and wealth management services." (Compl., ECF No. 1-3, ¶ 2.) A corporation cannot plead that it is itself an operating financial-advisory business while declaring that it employs no one and leases and occupies nothing in California. (ECF No. 34-1, ¶ 26.) That admission contradicts the August declaration's holding-company premise itself, not merely its geography.

Neither of Caulkins's declarations disputes the principal-place-of-business allegation. The July declarations are consistent with it. The opposition declaration, though it now asserts that Proxy Financial Corp. does no California business, does not mention the Complaint's allegations, does not withdraw or correct them, and does not reconcile them. Proxy's opposition brief does no more: confronted with its own allegation of its principal place of business, it does not contend that allegation was made in error; it argues only that the allegation does not matter. Proxy Financial Corp. stands on a pleading that admits California as its principal place of business while asking the

Court to accept a declaration that it does no business here at all. The admission controls. A principal place of business and the transaction of intrastate business are distinct inquiries, but a principal place of business is the corporation's nerve center, the place from which its officers direct, control, and coordinate its activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). A corporation that admits its nerve center is in California admits that it directs its business from here on a continuing basis, and that admission, with Caulkins's July testimony that its operational center and principal operations are here, establishes that Proxy Financial Corp. is localized in this State and transacts intrastate business.

The operative contract is to the same effect. The Asset Purchase and Sale Agreement on which this action is brought provides that Proxy Financial Corp. will purchase Defendant Hudson Valley Wealth Management's assets. (ECF No. 10-1.) It names Proxy Financial Corp. as the buyer and mentions no subsidiary or affiliate. Caulkins's opposition declaration concedes as much, stating that the Agreement "was entered into between Proxy Financial, a Delaware corporation, and Hudson Valley Wealth Management." (ECF No. 34-1, ¶ 25.) The party that contracted to buy Defendants' business, that sued to enforce the purchase, and that pleaded a California principal place of business is Proxy Financial Corp. The subsidiaries appear for the first time in a declaration designed to defeat this motion.

**D. On Either Version of the Facts, Proxy May Not Maintain This Action Without Qualifying.**

Cal. Corp. Code § 2203(c) bars an unqualified foreign corporation that transacts intrastate business from maintaining an action arising out of that business until it qualifies. *United Med. Mgmt. Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740. Defendants bear the burden on both elements, and they carry it under either account of the facts.

Proxy Financial Corp. is bound by its own admissions that it transacts business in California. Its Complaint admits a California principal place of business and an operating financial-advisory business, and Caulkins swore in July that the California operations are its own. Those are the corporation's own admissions. Its August attempt to disown them is a sham the Court should disregard; a corporation may not escape Cal. Corp. Code § 2203(c) by swearing, once qualification is raised, that the business it pleaded, and previously swore, was its own belongs

to someone else. The principle is familiar from the summary-judgment context, where a court declines to credit a declaration contradicting the declarant's own prior sworn testimony. *See, e.g., Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991); *D'Amico v. Board of Medical Examiners*, 11 Cal.3d 1, 21–22 (1974). The reasoning applies a fortiori here, where the Court itself weighs the two declarations. On the admissions that bind it, Proxy Financial Corp. transacts localized intrastate business in California, and this action, brought to enforce the very acquisition that its California operation was to perform, arises out of that business. The bar applies.

Cal. Corp. Code § 191(b) does not rescue Proxy Financial Corp. Proxy invokes that subdivision, faulting the Motion for citing only Cal. Corp. Code § 191(a), to argue that as a holding company it transacts no intrastate business of its own. But Cal. Corp. Code § 191(b) provides only that a foreign corporation is not transacting intrastate business "merely because its subsidiary" does so or because of its status as a member or manager of a domestic limited liability company. It defeats attribution based on corporate status; it has no application here because Defendants attribute nothing. Proxy Financial Corp. is itself the contracting party under the Agreement, as Caulkins concedes (ECF No. 34-1, ¶ 25), the plaintiff that sued to enforce that purchase, and the entity to which Caulkins attributed the California operation under oath in July. Defendants hold the parent to its own transaction and its own admissions, not to the status or conduct of any subsidiary. And Proxy Financial Corp. itself is not qualified or registered to transact intrastate business in California. (ECF No. 29-2, ¶¶ 2, 5 & Ex. 1.)

**E. Proxy's Remaining Arguments Do Not Avoid the Bar.**

Proxy's remaining arguments under Cal. Corp. Code § 191(a), that the transaction was interstate and that no repeated and successive transactions are shown, fail on its own evidence.

**1. The Business Underlying This Action Is Intrastate, Not Interstate.**

Cal. Corp. Code § 191(a) excludes interstate and foreign commerce from intrastate business, and Proxy argues that its acquisition of Hudson Valley's New York book was an interstate transaction outside the statute. The exclusion turns on the character and localization of the corporation's own activity in this State, not on the residence of its clients or the multistate features of a single purchase. The controlling question is whether the corporation has localized its

business in California through a continuing in-state establishment. A foreign corporation that has done so transacts intrastate business even though it serves an interstate clientele and particular transactions cross state lines.

The Supreme Court settled the point in *Union Brokerage Co. v. Jensen*, 322 U.S. 202 (1944). The corporation there was a federally licensed customhouse broker whose entire business was clearing goods imported from Canada, a business that by its nature existed only to serve foreign commerce. The Court nonetheless held that Minnesota could close its courts to the broker until it qualified, because the broker's business had become localized in Minnesota: more than 90 percent of its business had been diverted to the Minnesota port where it operated, it bought materials and services from people in the State, and it entered into business relationships there wholly outside its arrangements with importers and exporters. *Id.* at 203, 208. Its activities were "not confined to its services at the port of entry"; it had "localized its business," with "a wide variety of dealings with the people in the community." *Id.* at 210. A corporation that takes up a permanent and continuous place in the local economy submits to the State's regulation of its local presence, including qualification.

Caulkins described an even more substantial localization of Proxy Financial Corp.'s business in California. He swore that Proxy Financial Corp.'s largest office and largest concentration of staff are in Walnut Creek, that Walnut Creek is its operational center for acquisitions and client transitions, and that its acquisition-and-transition operations were and remain concentrated in California, which is its largest revenue market by a wide margin. (ECF No. 31-2, ¶¶ 3, 10, 11.) If a customhouse broker in pure foreign commerce must qualify once it localizes its operation in the forum, then so must a corporation that runs its largest office and its principal operations from California. That the acquired clients reside in several states changes nothing.

The same is true on the interstate commerce side, and Proxy's attempt to distinguish the point fails. In *Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276 (1961), the plaintiff's interstate drug sales were protected commerce, but its in-state office and resident salaried personnel who promoted those sales were local intrastate business, and New Jersey could condition that local

business on qualification without burdening the protected sales. *Id.* at 279–284. Proxy Financial Corp.'s California acquisition-and-transition operation is precisely such a separable local business, whatever the interstate features of any particular purchase. Proxy says *Eli Lilly* is different because the plaintiff there maintained a staffed office in the forum and directly employed resident personnel. That is precisely what Caulkins swore Proxy Financial Corp. maintains and employs in California. The distinction Proxy draws to escape the case is the fact pattern that places it within the case. Proxy cannot avoid the holding by describing the very localization that triggers it.

Proxy's further answer, that these decisions arose under the Commerce Clause and did not construe Cal. Corp. Code § 191, does not help it. Section 191(a) excludes "interstate or foreign commerce" in the same terms these cases use, and California courts apply that line under the statute itself. In *Neogard Corp. v. Malott & Peterson-Grundy* (1980) 106 Cal.App.3d 213, a Texas corporation that marketed its waterproofing system in all fifty states, and kept no office, inventory, or payrolled employees in California, was nonetheless transacting intrastate business here, because a corporation may serve an interstate market while localizing its operations in the State. *Id.* at 216–218, 226. *Mediterranean Exports, Inc. v. Superior Court* (1981) 119 Cal.App.3d 605, on which Proxy relies, involved a foreign corporation whose California activities were the solicitation of orders by independent contractors, subject to acceptance in Florida, with an office and clerical staff maintained only for the soliciting salesmen; the court found a triable issue because the sales were effected through independent contractors and the orders required acceptance outside California, activities expressly excluded by section 191(c), and because the office and clerical staff were maintained only for those soliciting salesmen. *Id.* at 611–612, 616–617. No exclusion in section 191(c) describes the operational center Caulkins swore to. Proxy Financial Corp. is on the localized side of that line by its own sworn account. On the admissions that bind it, the business underlying this action is intrastate within the meaning of Cal. Corp. Code § 191(a).

**2. Proxy's Own Declaration Establishes Repeated and Successive Transactions.**

Proxy also contends that Defendants identify only a single transaction, not the repeated and successive transactions Cal. Corp. Code § 191(a) requires. Proxy's own July declaration supplies them. Caulkins swore that Walnut Creek "served as Proxy's operational center for acquisitions and

client transitions," and that "Proxy's principal operations relating to acquisitions and client transitions were, at the time of the transaction, concentrated in California, and they remain so today." (ECF No. 31-2, ¶¶ 3, 10.) An operational center for acquisitions and client transitions, staffed by the only personnel in the country who perform those functions, is an operation of repeated and successive transactions, not an isolated deal. The purchase of Hudson Valley's book was one such transaction. Proxy's admission that California is its largest revenue market by a wide margin (ECF No. 31-2, ¶ 11) confirms a continuing, revenue-producing course of business rather than an isolated deal. And Defendants do not rest the required transactions on the retention of California counsel or on this litigation. Cal. Corp. Code § 191(c)(1), which excludes maintaining or defending actions and proceedings, is therefore beside the point.

**F. This Action Is Upon Proxy Financial Corp.'s Intrastate Business.**

Cal. Corp. Code § 2203(c) bars a nonqualified foreign corporation from maintaining an action that arises out of its transaction of intrastate business. *United Med. Mgmt.*, 49 Cal.App.4th at 1740. Proxy argues that this action is upon Defendants' contractual duties, not upon any intrastate transaction of Proxy's, and that anticipated transition work is not the transaction the action is brought upon. The argument mistakes the transaction at issue.

The transaction of intrastate business here is Proxy Financial Corp.'s acquisition of Hudson Valley's book of business, carried out through the California operation described above. Proxy Financial Corp. is the named buyer under the Asset Purchase and Sale Agreement (ECF No. 10-1, pp. 2, 7-8), and it is the plaintiff that brought this action to enforce that purchase. An action to enforce an acquisition is upon that acquisition. It was carried out through the California operation Caulkins described and satisfies the statute whether viewed as one of Proxy's repeated acquisitions or on its own terms as intrastate business transacted here. (ECF No. 31-2, ¶¶ 3, 10.)

The performance at the heart of this dispute was to be rendered by Proxy's Walnut Creek staff (ECF No. 31-2, ¶ 13); Defendants' alleged non-delivery is the asserted breach, but the acquisition those staff were to perform is the intrastate business upon which the action rests. *Neogard* so holds: a suit on a contract that is "part and parcel" of a course of intrastate business is an action upon intrastate business within section 2203(c). *Neogard*, 106 Cal.App.3d at 227. Both

elements of Cal. Corp. Code § 2203(c) are therefore satisfied.

**G. The Remedy Is a Stay to Permit Compliance, With Dismissal If Proxy Does Not Comply.**

The remedy Cal. Corp. Code § 2203(c) prescribes is a stay to permit the foreign corporation to comply. *United Med. Mgmt.*, 49 Cal.App.4th at 1740. The stay Defendants seek is the consequence the qualification statute prescribes, not a discretionary stay to be weighed against competing interests.

The requested dismissal is neither self-executing nor premature. Defendants ask only that the Complaint be dismissed if Proxy does not qualify within the time the Court sets, the remedy California law prescribes if the corporation does not cure. *Id.* at 1740–41.

## III.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court stay all proceedings, except rulings on pending motions, until Proxy Financial Corp. qualifies and registers under Cal. Corp. Code §§ 2105 and 2203(c), and that the Complaint be dismissed if it does not demonstrate compliance within the time the Court allows.

Dated: August 10, 2026

Respectfully submitted,

RASKIN TEPPER SLOAN LAW

/s/ Scott J. Tepper

By: _____
SCOTT J. TEPPER
Attorneys for Defendants and Counter-Claimants Hudson Valley Wealth Management and Christopher Conover

## **PROOF OF SERVICE**

Scott J. Tepper declares:

I am Defendants and Counter-Claimants' attorney in this matter. My business address is 11333 Iowa Avenue, Los Angeles, California 90025-4214, and my email address is stepper@raskinlawllp.com.

Emily A. Brandenburg, counsel of record appearing for Plaintiff Proxy Financial Corp., is a Member of the Bar of this Court who receives filed documents via the CM/ECF system.

Vincent Van Ho, also counsel of record, is not a Member of the Bar of this Court and pursuant to Local Rule 135(b), service has been made on Vincent Van Ho as set forth below.

On August 10, 2026, I served the foregoing REPLY BY DEFENDANTS IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING THE PLAINTIFF'S COMPLIANCE WITH CALIFORNIA CORPORATIONS CODE §§ 2105 AND 2203(c) on the interested parties in this action by the following means:

BY U.S. MAIL: By placing in an envelope on the date set forth above a true and correct copy of the above-referenced document and depositing the envelope in the United States mail, first-class postage prepaid and affixed, and addressed as follows:

> Vincent Van Ho, Esq.
> 901 H Street, Suite 120
> Sacramento, California 95814

BY ELECTRONIC MAIL: By transmitting on the date set forth above a true and correct copy of the above-referenced document in PDF format via electronic mail to the following email address: vincent@vholaw.com.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 10, 2026, at Los Angeles, California.

/s/ Scott J. Tepper

_____
SCOTT J. TEPPER