UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROXY FINANCIAL CORP.,<br>Plaintiff,<br>v.<br>HUDSON VALLEY WEALTH MANAGEMENT, et al.,<br>Defendants. | Case No. 2:26-cv-01495-CSK<br><br>ORDER<br>(ECF Nos. 4, 15) |

Pending before the Court are the following motions: (1) Defendants Hudson Valley Wealth Management, Inc. and Christopher Conover's motion to dismiss for improper venue (ECF No. 4); and (2) Plaintiff Proxy Financial Corp.'s petition to compel arbitration (ECF No. 15).[1] A hearing on both motions was held on July 7, 2026. Attorney Emily Brandenburg aka Emily Kearney appeared as counsel for Plaintiff; attorney Scott J. Tepper appeared as counsel for Defendants. (ECF No. 22.)

For the reasons that follow, the Court DENIES Defendants' motion to dismiss and DENIES Plaintiff's petition to compel arbitration. The Court also declines to transfer this

[1] This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF No. 5.)

action pursuant to 28 U.S.C. § 1404(a).

# I. BACKGROUND

## A. Factual Allegations

Plaintiff is a Delaware corporation that operates in financial advising and wealth management. Compl. ¶ 2 (ECF No. 1-3). Plaintiff alleges its principal place of business is in California. *Id.* Plaintiff alleges that on June 30, 2025, it entered into an asset purchase and sale agreement with Defendant Hudson Valley Wealth Management ("Hudson Valley"), through Hudson Valley's president and CEO, Defendant Christopher Conover, to acquire Hudson Valley's investment advisory client accounts comprising between $56 million to $80 million in assets under management (the "Agreement"). *Id.* ¶¶ 4, 12. The Agreement was governed by California law. *Id.* ¶ 15. Plaintiff alleges it transferred $664,000 as the initial purchase price to Defendants, to be refunded to the extent of the difference between the initial payment and the value of the transferred business within a certain time period. *Id.* ¶¶ 17, 19. Plaintiff alleges Defendants refused to transfer the assets pursuant to the Agreement. *Id.* ¶¶ 21-24. Plaintiff alleges monetary damages of at least $664,000. *Id.* ¶¶ 33-34.

## B. Procedural Posture

Plaintiff initiated this action in Sacramento County Superior Court on March 2, 2026, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, conversion, money had and received, and declaratory relief. Compl. at 1, ¶¶ 36-91. On April 10, 2026, Defendants removed this action to federal court based on diversity jurisdiction. Notice of Removal at 2-3 (ECF No. 1).

On April 14, 2026, Defendants moved to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a). Defs. Mot. (ECF No. 4). Plaintiff initially did not respond to the motion by the time provided under Local Rule 230. *See* Docket. On April 30, 2026, the Court vacated the hearing on Defendants' motion to dismiss and extended Plaintiff's deadline to respond to

May 7, 2026. 4/30/2026 Order (ECF No. 7). The same day, Defendants filed a statement indicating that Plaintiff had filed a demand for arbitration with the American Arbitration Association on April 15, 2026 and requesting that the Court transfer the action to the Southern District of New York rather than dismiss the action, pursuant to the Court's discretion to transfer rather than dismiss under 28 U.S.C. § 1406(a). (ECF No. 8.) Plaintiff did not file an opposition to Defendants' motion until June 1, 2026. Pl. Opp'n (ECF No. 13). Despite the opposition's late filing, the Court accepted the filing, provided Defendants an opportunity to respond, and reset Defendants' motion for hearing on July 7, 2026. 6/18/2026 Order (ECF No. 17). Defendants filed a reply on June 22, 2026. Defs. Reply (ECF No. 18).

On May 13, 2026, Defendants filed an answer and counterclaims against Plaintiff, including a counterclaim for declaratory relief that Plaintiff has waived its right to compel arbitration or mediation of this dispute. (ECF No. 10 at 16-19.) The same day, Defendants filed a Corrected Statement indicating that the parties' arbitration before the American Arbitration Association was still pending. (ECF No. 12.)

On June 1, 2026, Plaintiff filed a petition to compel arbitration and stay this action pending arbitration. (ECF No. 15.) Defendants filed an opposition on June 12, 2026. Defs. Opp'n (ECF No. 16). Plaintiff filed a reply on June 22, 2026. Pl. Reply (ECF No. 19). The Court set Plaintiff's petition to compel arbitration for hearing with Defendant's motion to dismiss. 6/18/2026 Order.

A hearing was held on July 7, 2026, and the Court ordered the parties to file supplemental briefs addressing the factors for transferring this case pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice. 7/8/2026 Order (ECF No. 23). Pursuant to the Court's order, Defendants filed their supplemental brief on July 15, 2026. Defs. Suppl. Br. (ECF No. 26). Plaintiff filed a supplemental opposition on July 22, 2026. (ECF No. 27.)

On July 23, 2026, Defendants objected to and requested striking an exhibit attached to Plaintiffs' supplemental opposition at ECF No. 27-2 because it contained

unredacted personally identifying information. (ECF No. 28.) On July 24, 2026, the Court granted Defendants' request to strike ECF No. 27-2 in its entirety and ordered Plaintiff to file either a revised supplemental opposition without any redactions or requested sealing, or to file a motion to seal pursuant to Local Rule 141. 7/24/2026 Order (ECF No. 30). Plaintiff accordingly filed an unredacted supplemental brief and declarations on July 27, 2026. Pl. Suppl. Opp'n (ECF No. 31). Defendants filed an objection to the unsigned Declaration of Vincent Van Ho (ECF No. 31-1) attached to Plaintiff's corrected supplemental opposition. (ECF No. 33.) In response, Plaintiff filed an amended declaration on August 20, 2026. 8/3/2026 Amended Declaration of Vincent Van Ho (ECF No. 38-1). Briefing is now complete. [2]

## II. LEGAL STANDARDS

### A. Venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a)

Rule 12(b)(3) and 28 U.S.C. § 1406(a) authorize the court to entertain a challenge to an action on grounds that venue is improper. The court may consider supplemental written materials and consider facts outside the pleadings in adjudicating a venue question. *Kelly v. Qualitest Pharm., Inc.*, 2006 WL 2536627, at *7 (E.D. Cal. Aug. 31, 2006).

If the court determines that venue is improper, it may dismiss the case, or, if the interests of justice require, the court may transfer the case to any district in which it properly could have been brought. 28 U.S.C. § 1406(a). The decision to transfer rests in the court's discretion. *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### B. The Federal Arbitration Act

Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Federal district courts must compel

---

[2] On July 24, 2026, Defendants filed a motion to stay (ECF No. 29), which will be addressed in a separate Order.

arbitration if "(1) a valid agreement to arbitrate exists between the parties and (2) the scope of the agreement encompasses the claims." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) (citation modified). "[C]ourts 'must hold a party to its arbitration contract just as the court would to any other kind' but 'may not devise novel rules to favor arbitration over litigation.'" *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "A petition under § 4 is frequently brought . . . as a preemptive motion where the other party has expressed a failure, neglect, or refusal to arbitrate." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1181 (9th Cir. 2025).

## III. DISCUSSION

Defendants initially moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a). Defs. Mot. Defendants indicate they now prefer transfer over dismissal. (*See* ECF No. 8.) Plaintiff moves to compel Defendants to arbitration and stay this action pending arbitration before the American Arbitration Association pursuant to the Federal Arbitration Act. Pl. Mot. (ECF No. 15-1).

Before proceeding to the parties' respective motions, the Court first addresses the issue of Plaintiff's late opposition to Defendants' motion.

### A. Plaintiff's Late Opposition

Defendants' motion to dismiss or transfer was filed on April 14, 2026. *See* Defs. Mot. Thus, pursuant to the Local Rules, Plaintiff's opposition was due on April 28, 2026. *See* E.D. Cal. Local Rule 230(c). Although the Court extended Plaintiff's response deadline to May 7, 2026, *see* 4/30/2026 Order, Plaintiff filed its opposition on June 1, 2026, almost a month after the Court's extended deadline. *See* Pl. Opp'n. Despite the

opposition's late filing, the Court accepted the filing, provided Defendants an opportunity to respond, and reset Defendants' motion for hearing on July 7, 2026. 6/18/2026 Order. Defendants filed a reply on June 22, 2026. *See* Defs. Reply. Thus, in light of Defendants' having the opportunity to respond to the opposition on the papers and at oral argument, the Court will consider Plaintiff's late opposition in its review of Defendants' motion. Plaintiff is cautioned, however, that failing to comply with filing and other court deadlines in the future may result in sanctions, including the striking of an untimely filing.

**B. Plaintiff's Petition to Compel Arbitration**

Plaintiff argues the Court should first consider Plaintiff's petition to compel arbitration before Defendants' venue motion. *See* Pl. Opp'n at 2, 4-5. "A court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (citation modified). The Court will address Plaintiff's petition to compel arbitration before Defendants' motion to dismiss.

At the outset, Defendants do not challenge whether Plaintiff can establish that: (1) a valid agreement to arbitrate exists between at least Plaintiff and Defendant Hudson Valley; and (2) the scope of the agreement encompasses the claims brought by Plaintiff at least as against Defendant Hudson Valley. Plaintiff apparently concedes that Defendant Conover is not bound to the Agreement's arbitration provision, having requested a stay pending arbitration "including the action against the individual Christopher Conover." Pl. Mot. at 6. However, if the Court were to compel arbitration, the claims against Defendant Conover are also arbitrable because he is an individual signatory to the Agreement. *See* 4/14/2026 Declaration of Christopher Conover, Exh. A at 1, 5-6 (ECF No. 4-2). In any event, the only dispute as to arbitration is whether Plaintiff has waived its right to compel arbitration of its claims by initiating this litigation. *See* Defs. Opp'n at 11-18.

"[T]he burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong*, 59 F.4th

at 1015. “[T]he party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right.” *Id.* “The Supreme Court's recent decision in *Morgan v. Sundance*, [596 U.S. 411] (2022), has removed prejudice to the non-moving party as an element of waiver in the context of arbitration contracts.” *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023). Ninth Circuit case law addressing the other two elements of waiver in the arbitration context remains good law. *Id.*

Here, as to the first prong, the parties do not dispute that Plaintiff had prior knowledge of an existing right to compel arbitration when, on November 5, 2025, Plaintiff conveyed to Defendants a demand letter that referred to Plaintiff’s rights to demand mediation and arbitration under §§ 6.4(a)-(c) of the Agreement. 6/8/2026 Declaration of Christopher Conover, Exh. D (ECF No. 16-2).

The second prong is a closer call. There is no “concrete test” for whether a party took intentional acts inconsistent with its right to arbitration, and courts should consider the totality of the party’s actions. *Armstrong*, 59 F.4th at 1015. Courts must “evaluat[e] a party's actions and ask[] whether those actions, even if seemingly commonplace and not an express disavowal of arbitral forums, evinced the party's partiality for a judicial resolution of the claims.” *Hill*, 59 F.4th at 472.

Here, although Plaintiff initiated this action, it has not participated in litigating this case beyond responding to Defendants’ motion to dismiss and presenting arguments in support of its petition to compel arbitration.[3] District courts are split as to whether plaintiffs in similar procedural positions, *i.e.*, where little has proceeded in the litigation beyond filing the complaint, have acted inconsistently with a plaintiff’s right to arbitrate. *Compare Leo Middle E. FZE v. Zhang*, 2022 WL 207663, at *4 (N.D. Cal. Jan. 24, 2022) (“Choosing to file their complaint with this Court indicates that Plaintiffs . . . did not wish to exercise their right to arbitrate.”); *Haliburton Int'l Foods, Inc. v. Marasco*, 2020 WL

[3] Plaintiff also opposes Defendants’ pending motion to stay. (ECF No. 34.)

7872126, at *2 (C.D. Cal. Dec. 3, 2020) (same); *Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*, 344 F. Supp. 3d 1111, 1122-23 (N.D. Cal. 2018) (same); *and United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) (holding plaintiff who filed a complaint requesting jury trial and damages acted inconsistently with its right to arbitrate but ultimately finding no waiver due to lack of prejudice), *with Aguilar v. Enersys Energy Prods., Inc.*, 2022 WL 2285657, at *4 (C.D. Cal. Jan. 18, 2022) ("[T]he filing of a suit alone is not inconsistent with a right to compel arbitration."); *Dessaints v. Jayco, Inc.*, 2021 WL 4851884, at *3 (D. Nev. Oct. 18, 2021) (same); *Russell Sigler, Inc. v. Whitaker*, 2019 WL 3220577, at *4 (C.D. Cal. May 21, 2019) (same); *Tonelli v. Wells Fargo Bank, N.A.*, 2021 WL 6689665, at *3 (N.D. Cal. Feb. 3, 2021) (same); *and Palmer v. Omni Hotel Mgmt. Corp.*, 2016 WL 816017, at *4 (S.D. Cal. Mar. 1, 2016) (same).

The Court agrees with the district courts that hold that a plaintiff's initiation of a lawsuit over arbitrable claims is inherently inconsistent with the right to arbitrate. If a party intends to pursue arbitration, the voluntary filing of a lawsuit on the same arbitrable claims contradicts that intent. Having this in mind, the Court considers the totality of Plaintiff's actions leading up to its petition to compel arbitration.

On review of the record, Plaintiff's actions show it has acted inconsistently with its right to arbitrate its claims against Defendants. First, Plaintiff voluntarily initiated this lawsuit months after demanding informal dispute resolution under the Agreement's mediation and arbitration provision. As mentioned already, on November 5, 2025, Plaintiff sent Defendants a demand for informal dispute resolution, referencing the Agreement's mediation and arbitration provisions. *See* 6/8/2026 Conover Decl., Exh. D. Defendant Conover replied to Plaintiff's demand by email on November 25, 2025, stating he was "working on potential options with counsel" and would "get back to [Plaintiff] shortly after the [2025] Holiday to start that conversation." 6/8/2026 Conover Decl., Exh. E (ECF No. 16-2). Communications apparently broke down after that, as neither party followed up with the other. But instead of continuing to pursue mediation or arbitration under the Agreement, Plaintiff filed this action in Sacramento County Superior Court on

March 2, 2026. *See* Compl.

Second, only after Defendants removed this action to federal court on April 10, 2026, and filed their motion to dismiss on April 14, 2026, did Plaintiff then submit, on April 15, 2026, a demand for arbitration to the American Arbitration Association. *See* 6/1/2026 Declaration of Vincent Ho ¶ 3 (ECF No. 15-5), Exh. A (ECF No. 15-6). However, Plaintiff did not seek compelling arbitration at this time. On April 21, 2026, Defendants emailed Plaintiff and the arbitration administrator, asserting that Plaintiff had waived its right to arbitrate and requesting the arbitration be closed. 6/11/2026 Declaration of Scott J. Tepper, Exh. C at 1-3 (ECF No. 16-1). Plaintiff then waited over a month after this exchange to finally submit its petition to compel arbitration before the Court. (*See* ECF No. 15.)

Plaintiff delayed for about three months after initiating this lawsuit, waiting until after Defendants filed their motion to dismiss or transfer and their answer and counterclaims in this Court before bringing Plaintiff's petition to compel arbitration. (*See* ECF Nos. 4, 10.) These delays are inconsistent with Plaintiff's right to compel arbitration. *See Haliburton*, 2020 WL 7872126, at *3 (holding plaintiff acted inconsistently by delaying filing motion to compel arbitration until after defendant filed counterclaims and after plaintiff opposed motion to dismiss).

Third, Plaintiff's Complaint refers to the Agreement but makes no reference to the Agreement's mediation and arbitration provisions or to Plaintiff's prior efforts in November 2025 to seek alternative dispute resolution. *See* Compl. Nor does the Complaint request any judicial relief in *aid* of arbitration. *See id.* Rather, the Complaint alleges monetary damages of at least $664,000, demands a jury trial on seven causes of action related to Defendants' alleged breach of the Agreement, and seeks rescission of the underlying Agreement without limitation as to the arbitration provision that Plaintiff now seeks to enforce. *Id.* at 1, 12 ¶ 59, 15-16. Thus, Plaintiff's lawsuit indicates a lack of intent to enforce Plaintiff's right to arbitrate its claims. *See United Computer*, 298 F.3d at 765; *Hebei Hengbo*, 344 F. Supp. 3d at 1122 (finding plaintiff acted inconsistently where

it initiated action seeking rescission of contract containing arbitration clause, seeking jury trial and damages).

Thus, considering that (1) Plaintiff initiated this litigation *after* making a demand for informal dispute resolution under the Agreement's mediation and arbitration provision; (2) Plaintiff failed to disclose in its Complaint the Agreement's arbitration provision or Plaintiff's prior dispute resolution efforts under the Agreement; (3) Plaintiff submitted an arbitration demand on April 15, 2026 only *after* Defendants removed this action to federal court and filed a motion to dismiss; and (4) Plaintiff did not dismiss its lawsuit after making an arbitration demand on April 15, 2026, and instead delayed in filing its petition to compel arbitration until June 1, 2026, the Court concludes Plaintiff has performed intentional acts inconsistent with its right to arbitrate its claims against Defendants.

Plaintiff's contrary arguments fail. Plaintiff argues that under *Armstrong*, a party acts inconsistently with its right to arbitrate only if it "(1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." Pl. Mot. at 5 (quoting *Armstrong*, 59 F.4th at 1015). However, the Ninth Circuit in *Armstrong* applied this formulation of the second waiver prong to a defendant party, not to a plaintiff who had filed a lawsuit on arbitrable claims. Plaintiff's reply cites *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988 (7th Cir. 2011), which is distinguishable on the same grounds. *See* Pl. Reply at 11.

Plaintiff also cites *Agnes Medical Center v. PacifiCare of California* for the holding that "the mere filing of a lawsuit does not waive contractual arbitration rights." 31 Cal. 4th 1187, 1200 (2003); Pl. Reply at 6. Notwithstanding that this case from the California Supreme Court is not binding authority in federal court, to the extent that *Agnes Medical* was applying federal law, it held that "the mere filing of a lawsuit does not waive contractual arbitration rights [because] [t]he presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law." As discussed

above, prejudice is no longer at issue in determining waiver of the right to arbitrate, so it is unclear the extent to which *Agnes Medical*'s statement remains intact.

Further, although Plaintiff argues it "never decided not to move to compel Arbitration," that argument is belied by the fact it initiated this action in state court without any reference to arbitration in the Complaint. "Had Plaintiff truly been wedded to the superiority of arbitration for resolving its claims, it could have filed a notice of non-opposition to [Defendants'] Motion to Dismiss, withdrawn its case, taken its claims to arbitration, and saved [Defendants] and the Court a lot of time." *Haliburton*, 2020 WL 7872126, at *3. Plaintiff also delayed in seeking to compel arbitration where it filed its petition after removal, after Defendants' motion to dismiss, and after Defendants filed their answer and counterclaims.

In summary, because the facts indicate Plaintiff knew of its right to arbitrate and intentionally acted against that right by filing this lawsuit and seeking resolution of its arbitrable claims in a judicial forum, Plaintiff has waived its right to compel arbitration. Accordingly, Plaintiff's petition to compel arbitration is denied.

**C. Defendants' Motion to Dismiss**

Defendants argue that proper venue in this case is governed under 28 U.S.C. § 1391(b) and that this case satisfies none of the conditions specified therein. Defs. Mot. at 8-10. Defendants also argue that the mediation and arbitration provisions in the Agreement do not establish that venue in this district is proper because, although they specify mediation and arbitration in Sacramento County, they do not constitute a forum-selection clause for civil litigation as opposed to alternative dispute resolution. *Id.* at 10-12. Finally, Defendants argue Plaintiff has no ties to California other than the fact its counsel maintains offices in Sacramento. *Id.* at 12-13.

Defendants' arguments fail. Venue is proper under 28 U.S.C. § 1441, which applies instead of § 1391 in removed cases and provides that venue is proper when a case is removed "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Here,

Defendants removed this action from Sacramento County Superior Court to the Sacramento Division of the Eastern District of California, which satisfies § 1441(a). Defendants further concede venue is proper under § 1441(a). Defs. Mot. at 7.

Although Defendants attempt to resist this conclusion by asserting that venue is "*procedurally proper*" upon removal under § 1441(a), but not "*substantively proper* under § 1391," Defs. Mot. at 7 (emphases in original), this theory lacks support. The Supreme Court has long held that, "on the question of venue, [§] 1391 has no application [to] a removed action. The venue of removed actions is governed by 28 U.S.C. [§] 1441(a)." *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953). Thus, whether venue is proper under § 1391(b) is immaterial. *See Polizzi*, 345 U.S. at 666; *see also, e.g.*, *Olmsted v. Found. Partners Grp., LLC*, 2022 WL 1665172, at *5 (E.D. Cal. May 25, 2022) (collecting cases); *Bakersfield Pipe & Supply v. Cornerstone Valve, LLC*, 2014 WL 7409225, at *3 (E.D. Cal. Dec. 30, 2014); *Miller v. California Dep't of Corr. & Rehab.*, 2013 WL 5954803, at *4 (E.D. Cal. Nov. 6, 2013). Defendants present no authority to the contrary.

Accordingly, because Defendants fail to rebut that venue is proper in this removed action under 28 U.S.C. § 1441(a), the Court denies Defendants' motion to dismiss for improper venue.

**D. Transfer Under § 1404(a)**

Where venue is otherwise proper, a district court may nonetheless transfer an action pursuant to 28 U.S.C. § 1404(a). In their supplemental brief on this issue, Defendants argues that transfer is appropriate because (1) Defendants reside in New York; (2) negotiations of the Agreement occurred over telephone, by video, or in New York; (3) Defendants' witnesses are in New York; (4) Plaintiff's employees who negotiated the Agreement work in Florida; (5) no witnesses or evidence are located in the Eastern District of California; (6) Plaintiff maintains a New York office; and (7) Plaintiff's choice of forum merits only minimal consideration. Defs. Suppl. Br. at 2.

28 U.S.C. § 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of

parties and witnesses and in the interests of justice. "The purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation modified). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation modified).

District courts employ a two-step analysis when determining whether to transfer an action. "A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (citing *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). If the party seeking transfer makes this threshold showing, the court undertakes an individualized, case-by-case consideration of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). In addition to considering the convenience of the parties and the witnesses, the court may consider, in "the interests of justice," multiple factors including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99. The party seeking transfer bears the burden of showing that transfer is appropriate. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

Here, neither side disputes that this action could have been brought in the Southern District of New York, which encompasses the area where both Defendants reside. *See* 28 U.S.C. § 1391(b)(1). The Court turns to whether transfer would be

appropriate considering the convenience of the parties and witnesses and the interests of justice.

1. Plaintiff's Choice of Forum

In its supplemental opposition, Plaintiff argues that its choice of forum is entitled to substantial deference because Plaintiff's counsel negotiated the Agreement from California, Plaintiff's claims arise under California law, the Agreement is governed by California law and contains a California dispute-resolution clause, and Plaintiff's operations are concentrated in California. Pl. Suppl. Opp'n at 5; 8/3/2026 Amended Ho Decl. ¶¶ 7, 15, 33, 34;[4] 7/22/2026 Declaration of Bryan Caulkins ¶ 3 (ECF No. 31-2).

Generally, courts give deference to the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). However, "the initial choice of forum is given diminished weight when there are only limited material connections between the events underlying the action and the initial forum." *Newby v. Treyled Life Settlements LLC*, 2025 WL 585913, at *1 (E.D. Cal. Feb. 24, 2025) (citation modified). "[W]hen determining how much weight to give Plaintiff's choice of forum, courts should look at both parties' contacts with the forum state, and how those contacts relate to the underlying claims." *Tillack v. Rahman*, 2018 WL 6380889, at *2 (C.D. Cal. Nov. 5, 2018) (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)).

Here, it is unclear whether a substantial connection exists between this district, the parties' contacts with this district, and the subject matter of this litigation. For

---

[4] Defendants objected to the Ho Declaration dated July 22, 2026 and filed on July 27, 2026 (ECF No. 31-3) on grounds that Mr. Ho is not permitted to type-sign his signature because the Local Rules prohibit an attorney not admitted to this district from doing so. (ECF No. 33.) On August 20, 2026, Plaintiff filed the Amended Ho Declaration dated August 3, 2026, containing an electronic signature compliant with Local Rule 131(f). (ECF No. 38-1.) Because the August 3, 2026 Amended Ho Declaration cures any purported signature defects in the July 22, 2026 Ho Declaration, Defendants' objections and request to strike the July 22, 2026 Ho Declaration (ECF No. 33) are overruled and denied as moot.

example, although Plaintiff's counsel negotiated the Agreement from Sacramento, California, neither party seriously disputes that the Agreement was negotiated and executed remotely, with Plaintiff and its counsel negotiating from California and Florida and Defendants negotiating from New York. *See* Pl. Suppl. Opp'n at 5; Defs. Suppl. Br. at 2; *see also* 7/15/2026 Declaration of Christopher Conover ¶ 3 (ECF No. 26-1); 7/22/2026 Caulkins Decl. ¶ 4. The Agreement itself appears to focus primarily on connections outside of California because Plaintiff asserts that under the Agreement, it purchased client accounts of which "the majority . . . were in the New York, New Jersey, and Connecticut area." 7/22/2026 Caulkins Decl. ¶ 17. Further, Plaintiff "contemplated establishing an office presence in Pearl River[, New York] to service the acquired client relationships." *Id.* ¶ 16. On the other hand, Plaintiff avers that Defendants' book of business to be sold under the Agreement also included at least some clients in California, and Plaintiff would have performed the work of transitioning Defendants' clients to Plaintiff from its offices in Walnut Creek, California. *Id.* ¶¶ 3, 13-15, 17. Based on these facts, Plaintiff's choice of forum merits some deference. As a result, this factor weighs against transfer.

2. <u>Convenience of the Parties and Witnesses</u>

Defendants argue that transfer to the Southern District of New York is appropriate because Defendants are located in New York along with Defendant Hudson Valley's employees and Defendant Conover's accountants, and Plaintiff maintains a New York office according to its website. Defs. Suppl. Br. at 2; 7/15/2026 Conover Decl. ¶¶ 2, 4, 7. Further, Defendants claim that Plaintiff's negotiators work out of Florida. Defs. Suppl. Br. at 2; 7/15/2026 Conover Decl. ¶ 6. Defendants contend that their witnesses, which include Defendant Conover, Defendant Conover's office assistant, and Defendant Conover's accountants, are located in New York. Defs. Suppl. Br. at 2; 7/15/2026 Conover Decl. ¶ 4. Defendants claim these witnesses have knowledge of Plaintiff's representations and promises in the course of negotiating the Agreement. 7/15/2026 Conover Decl. ¶ 4.

In response, Plaintiff contends that its largest office is located in Walnut Creek, California, which hosts its "principal operations relating to acquisitions and client transitions." Pl. Suppl. Opp'n at 5; 7/22/2026 Caulkins Decl. ¶¶ 3, 10-11, 13. Plaintiff denies that it maintains a New York office and states that its only New York connection is a passive minority shareholder. Pl. Suppl. Opp'n at 5-6; 7/22/2026 Caulkins Decl. ¶¶ 7-9. Plaintiff names multiple witnesses whom Plaintiff relies on who are located in California or outside of New York: Vincent Van Ho, Plaintiff's counsel in this action who is located in Sacramento, California; Arthur "Wayne" Potter, an employee who is located in Walnut Creek, California; Alicia Weitzel, an employee who is located in Phoenix, Arizona; C.J. Davidson, a co-founder of Plaintiff who is located in Dallas, Texas; and Bryan Caulkins, Plaintiff's party representative who is located in Florida. Pl. Suppl. Opp'n at 7-8; 7/22/2026 Caulkins Decl. ¶¶ 4-6, 15, 20-23. Plaintiff also states that four other employee witnesses are located in Walnut Creek, California. Pl. Suppl. Opp'n at 7; 7/22/2026 Caulkins Decl. ¶¶ 3, 19. Plaintiff states these witnesses have knowledge of the parties' transaction, the negotiation of the Agreement, and Defendants' failure to perform under the Agreement. Pl. Suppl. Opp'n at 7-8.

"The convenience of witnesses is often the most important factor in determining whether a § 1404 transfer is appropriate. In assessing whether the convenience of the witnesses favors transfer, the Court must consider both the location and number of witnesses each side has and the relative importance of those witnesses." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762-63 (C.D. Cal. 2016) (citation modified). Where equally important witnesses are in both districts, the convenience of the witnesses does not weigh in favor of transfer because "[t]he transfer would merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843.

Here, although proceeding with the case in California is inconvenient for Defendants and their witnesses, proceeding with the case in New York would be similarly inconvenient for Plaintiff and its witnesses. Thus, this factor is neutral because "[i]n essence, Defendants are trying to shift the inconvenience of litigating this action to

Plaintiff." *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 WL 12591478, at *5 (C.D. Cal. Mar. 10, 2014); *see also CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 962 (D. Or. 2018) ("Defendant has not made a strong showing that the convenience of either the party or nonparty witnesses justify transferring this case.").

3. Other Factors in the Interests of Justice

The Court finds that the remaining factors are neutral or slightly disfavor transfer.

*a. Place of negotiation and execution of the relevant agreements*

As discussed above, the agreement was negotiated remotely and from both California and New York. *See CollegeNet*, 355 F. Supp. 3d at 963 (place of negotiation and execution neutral where "there is no one prominent location for negotiation or execution that would sway this Court's determination under this factor") (citation omitted). This factor is neutral.

*b. Each forum's familiarity with governing law*

The parties do not appear to dispute that the Agreement is construed under California law pursuant to a California choice-of-law clause. *See* 4/14/2026 Conover Decl., Exh. A § 6.1. This factor weighs only slightly against transfer because "other federal courts are fully capable of applying California law," *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007), especially where the applicable law is not complex. *See Weyerhaeuser Co. v. AIG Prop. Cas., Inc.*, 2021 WL 1575364, at *5 (W.D. Wash. Apr. 22, 2021) ("The ultimate determination on choice of law bears minimal weight on the Court's venue evaluation because federal courts are equally equipped to apply distant state laws when the applicable law is not complex." (citation modified)); *Baxter Senior Living, LLC v. Midland States Bancorp, Inc.*, 2022 WL 2290688, at *5 (D. Alaska June 24, 2022).

*c. The parties' contacts with this forum and the contacts relating to Plaintiff's causes of action in this forum*

These factors are neutral. As discussed above, Plaintiff's contacts with California

relate to its causes of action because Plaintiff's employees in Walnut Creek, California intended to implement the transfer of Defendants' book of business as set out in the Agreement. 7/22/2026 Caulkins Decl. ¶¶ 3, 13-15, 17. Further, at least some of Defendants' clients are based in California. *Id.* ¶ 17. Plaintiff asserts it does not have ongoing contacts with New York related to this dispute, whereas Defendants do have ongoing contacts with New York and negotiated the Agreement out of New York. Thus, there are contacts related to this action in both California and New York. Accordingly, these factors are neutral. *See Baxter Senior Living*, 2022 WL 2290688, at *5.

*d. Difference in litigation costs*

This factor is neutral. Plaintiff asserts generally that "[l]itigation costs are generally reduced when venue is located near the most witnesses expected to testify." Pl. Suppl. Opp'n at 8. "In the absence of any evidence on the record, the Court can only conclude that this factor is neutral." *A&B Beverage Co., LLC v. Coca-Cola Co.*, 2016 WL 11966888, at *10 (C.D. Cal. Jan. 7, 2016).

*e. Availability of Compulsory Process*

This factor is neutral. Both parties have named non-party witnesses but have not indicated that compulsory process may be required to compel their attendance. Plaintiff identifies its own counsel, Vincent Van Ho, as a non-party witness, Pl. Suppl. Opp'n at 7, and Defendants identified Defendant Conover's accountants, Defs. Suppl. Br. at 2. Defendants also suggest that non-party Cambridge Investment Research, based in Fairfield, Iowa, may also be a relevant witness regarding Plaintiff's purportedly fraudulent representations to Defendants. 7/15/2026 Conover Decl. ¶ 5. In any event, this witness would be outside the 100-mile subpoena power of both this district and the Southern District of New York. *See* Fed. R. Civ. P. 45(c)(1)(A). Thus, this factor is neutral. *See Weyerhaeuser*, 2021 WL 1575364, at *8 ("The Court finds this factor neutral, as neither party has identified non-party witnesses that may require compulsory process to compel attendance.").

/ / /

*f. Ease of access to sources of proof*

As discussed above, the parties have proposed witnesses based in both California and New York. Further, because the evidence in this case is largely documentary evidence, that evidence may be transmitted electronically. As a result, this factor is neutral. *See MabVax Therapeutic Holdings, Inc. v. Sichenzia Ross Ference LLP*, 2019 WL 13198241, at *21 (S.D. Cal. May 9, 2019) (ease-of-access factor neutral where "[r]elevant business and legal records may be located in multiple states, including California, and Defendants have not shown any anticipated difficulty related to the electronic transfer of these records").

4. <u>Summary</u>

The majority of the § 1404(a) factors either are neutral or weigh against transfer. Because there is no clear indication that the Southern District of New York would be the most convenient venue for the parties, the Court concludes that Defendants have not made a sufficient showing to overcome Plaintiff's choice of forum. *See Decker Coal Co.*, 805 F.2d at 843; *Ingram*, 2014 WL 12591478, at *5. Accordingly, the Court declines to transfer this action pursuant to 28 U.S.C. § 1404(a).[5]

## IV. CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1. Plaintiff's petition to compel arbitration (ECF No. 15) is DENIED; and
2. Defendants' motion to dismiss (ECF No. 4) is DENIED.

Dated: September 3, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, prox.1495.26Plaintiff also states

[5] The Court reaches this conclusion without determining whether the Agreement's alternative dispute resolution provisions providing for mediation or arbitration in Sacramento County, California constitutes a judicial forum-selection clause. *See* 4/14/2026 Declaration of Christopher Conover, Exh. A § 6.4.